**In re OAKES.**

Patent Appeal No. 4801.

Court of Customs and Patent Appeals.
Jan. 3, 1944.

Harold J. Kinney, of St. Paul, Minn. (Chas. S. Grindle, of Washington, D. C., and Mark Severance, of St. Paul, Minn., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the action of the Primary Examiner in finally rejecting, upon the prior art, claims 27 and 29 of appellant's application for a patent filed as a continuation in part of a prior application, Serial No. 228,188. From the decision of the board appellant appeals here.

Claims 27 and 29 read as follows:

"27. A flexible abrasive article adapted to be used wet for abrading or polishing glass, marble, and the like which comprises a sheeted backing material; an impregnating or sizing coat for said sheeted backing material which consists of a film-forming, waterproof adhesive material comprising a substantially nonoxidizable thermoplastic synthetic resin, said sizing coat being substantially completely free of drying oils; a waterproof organic grit-bonding or binder coat comprising a heat convertible synthetic resin, joined to the sized sheeted backing aforesaid; and a multiplicity of abrasive particles embedded in said grit-bonding coat; said grit-bonding coat being less flexible and very substantially harder than said impregnating or sizing coat."

670

"29. A flexible abrasive article of the coated abrasive type adapted to be used wet for abrading or polishing glass, marble, and the like which comprises a sheeted material impregnated or sized with a coating which consists of a film-forming, elastic waterproof adhesive material comprising a substantially nonoxidizable, film-forming elastomer, said sizing coating being substantially completely free of drying oils; a dissimilar synthetic grit bonding or binder coat which is less flexible and very substantially harder than said impregnating or sizing coat, and which has a hardness at least substantially as great as that of a straight phenol-aldehyde resin, joined to the sized sheeted backing aforesaid; and a multiplicity of abrasive particles embedded in said grit bonding coat; the aforementioned impregnating or sizing coating being further characterized in that: it will not deteriorate or substantially soften at 100° C., it will not rot or deteriorate said sheeted material or backing, and it increases substantially the strength of adhesion of the dissimilar grit-bonding coat aforesaid to said sheeted material or backing."

The alleged invention defined by the claims broadly relates to flexible abrasive articles of the coated abrasive type which are, as stated by appellant and as is recited in the claims, adapted to be used for abrading or polishing glass, marble, and the like. The abrasive article comprises a sheeted backing material and an impregnating or sizing coat for said sheeted backing material, which consists of a film-forming, waterproof adhesive material and comprises a "substantially non-oxidizable thermoplastic synthetic resin." The claims require that the sizing coat be "substantially completely free of drying oils." On this coating is placed a "waterproof organic grit-bonding or binder coat comprising a heat convertible synthetic resin, joined to the sized sheeted backing." Upon this is superimposed a multiplicity of abrasive particles embedded in the said grit-bonding coat. The claims finally require that the grit-bonding coat be less flexible and very substantially harder than the sizing coat.

It will be noticed that much of the language contained in both of the claims relates to the use of the material and generalities as to its characteristics.

The Primary Examiner rejected the claims on the following references:

Carlton 1,775,631 September 16, 1930

Dietz et al. 2,004,466 June 11, 1935
Shuey 2,025,249 December 24, 1935

The pertinent portion of the examiner's rejection is stated in the following language:

"It is believed that claims 27 and 29 were properly denied entry in the application in view of the art cited above.

\*     \*     \*     \*     \*

"In view of patent to Dietz et al, who discloses an ultimate or top bond coat which is harder than the preliminary bond coat, it is not believed to involve invention for either Shuey or Carlton to make a device having such an arrangement of coats of a phenolic resin material; that is, a preliminary phenolic resin bond coat which is softer and more flexible than the ultimate or top bond coat. Both Shuey and Carlton disclose the known procedure of rendering their phenolic resins more flexible by the addition of flexibilizing agents of a non-drying oil type, such as amiline, tricresyl phosphate, dibutol phthalate, glycerol, starch, dextrine, sugar, proteins or shellac. Since these patentees have disclosed the flexibilized non-drying resin materials, it is believed that it would take nothing more than mechanical skill to combine them in the manner disclosed by patent to Dietz et al."

The board, after commenting upon the fact that appellant had been allowed a number of claims "in which the specific character of the materials used in the two coats has been more definitely set forth," called attention to the fact that the examiner held "the claims rejectable in view of these two patents [Dietz et al. and Shuey]" and the patent to Carlton, and then said:

"\*   \*   \* This latter patent [Carlton] is not as pertinent, in our opinion, but is effective to show a preliminary coat of a phenol aldehyde resin and a final bonding coat of a similar material on an abrasive body such as a waterproof sheet abrasive. In the first place, it is noted that the rejected claims are not specific to any particular material but are broadly drawn primarily to a flexible abrasive article in which an impregnating or sizing coat is applied to a sheeted backing formed of waterproof non-oxidizable adhesive material as a thermoplastic synthetic resin free of drying oils. A second coat in the form of a waterproof binder coat for the grits is a heat convertible synthetic resin.

"The Dietz patent describes an abrasive sheet coated on both sides with a back size and a presize, the first as an impregnating emulsion and the second as a waterproof varnish sealer as a base for the binder, a flexible resinous varnish. The patentee states that the paper base is impregnated for strength and teaches also that the best results are obtained when one of the resin coatings designated by the numerals 5 and 6 is somewhat flexible and the other coating is comprised of a hard, strong resin.

\* \* \* \* \*

"The Shuey patent is most pertinent in that it describes a moisture-proof abrasive implement with a flexible base and he states that 'desirability of a bond immune both to moisture and to atmospheric influences has long been recognized.' He suggests that the binder would not be confined to a phenol formaldehyde condensation product alone but to impart flexibility thereto. He suggests as a coating composition reacting tung oil or other fatty oil with a phenol and thereupon including formaldehyde and a suitable solvent such as benzol and alcohol as described in the patent to Byck No. 1,590,079. The patentee states that the binder is superior to glue and also to an oil bond in that it does not depend upon air oxidation for drying. It seems to us that this statement is clear as to non-oxidizable character, especially in view of the reference in the first column of page 1, line 42, to the desirability that the bond be inert to oxygen. Appellant's argument in this connection is not convincing.

"The patentee states that 'the grit can be secured by the oil varnish coat and the phenolic condensation product then applied; in this case the top coat is preferably thinned so as not to completely cover the grains. This procedure results in a flexible tough oil coating adhering to the base while the protective surface coat that is strongly adherent to the oil varnish coat possesses the inertness and resistance of a phenolic condensation product.' He then describes how the flexibility can be increased by the addition of certain plasticizers or softening agents.

"It seems to us that this patent is quite definite to a double coated abrasive article of the type under consideration with one coat flexible and the other harder. Shuey does not necessarily use an oil modified resin and this is clear from page 1, column 2, line 29, as well as the statement beginning in the same column, line 50 and following, with reference to the infusible insoluble resin. After consideration of appellant's argument we are convinced that the claims on appeal are not patentable. The examiner has discussed this matter more fully."

In reading the above quotations from the decisions of the tribunals below, it will be observed that the board, contrary to appellant's contention, has substantially adopted the views of the examiner in rejecting the claims.

■ In this court appellant argues that the Solicitor for the Patent Office has injected a new ground of rejection into the case in so far as he comments on the *breadth* of the claims. We could hardly regard this as a new ground of rejection in this case. The board stated that the claims are "broadly drawn, etc." Claims which are so broadly drawn as not to distinguish patentably from the prior art should always be rejected, and this is probably the most frequent ground of rejection of patent claims. We do not regard it as improper to refer to the breadth of the claims when the language is so broad as not to define invention over cited prior art.

■ Appellant argues here that the tribunals have improperly rejected his claims upon the prior art and points out, as did the board and the examiner, the particulars in which the references, either singly or combined, do not disclose certain limitations found in the claims. The courts have many times held that claims may properly be rejected upon a combination of references even though that combination does not show all the elements defined in the claims. As we understand the board's position, it holds, as did the examiner, that in view of what the prior art shows, the claims do not define invention over the prior art. That is to say what appellant's claims call for that is not shown in the prior art does not make the claims patentable over the disclosures of the prior art. We agree with the holdings of the board with respect to the rejection of the claims. The tribunals below correctly stated the disclosures of the references, and a repetition thereof is not deemed necessary here.

It appears from the record that appellant's application Serial No. 228,188 above referred to, was involved in a suit under

R.S. § 4915, 35 U.S.C.A. § 63, in which Mr. Justice Luhring of the District Court of the United States for the District of Columbia directed the allowance of two claims which were numbered 4 and 5. Those claims were subsequently transferred to the present application and appear therein as claims 6 and 7 and are in the record under the heading of "Allowed Claims." Justice Luhring made certain findings of fact and conclusions of law. From these facts appellant argues that the board failed to give proper consideration to the holdings of said District Court.

■■■ The reasoning of another court on the nature of an invention and its conclusions as to the prior art in a case such as the one at bar may be a proper and persuasive matter for consideration by this court, but it is argued by no one that it is controlling or binding on us. The claims there were different from the claims at bar, being more restricted to certain characteristics of the component materials of the abrading article. Moreover, it is well settled under circumstances similar to those which confront us here that our decision as to the patentability of claims should not rest upon the allowance of different claims in the same application or in any other application. In re Farrand, 49 F.2d 1035, 18 C.C.P.A., Patents, 1452; In re Zalkind, 118 F.2d 356, 28 C.C.P.A., Patents, 959.

■■■ Appellant also calls attention to the fact that the instant claims were allowed by the Canadian Patent Office and urges that this fact, while not controlling or binding on this court, is "an *evidentiary fact*, which may be given what weight it deserves by this Court." [Italics quoted]

In Re Guinot, 76 F.2d 134, 135, 22 C.C.P.A., Patents, 1067, this court said concerning a claim, where the German Patent Office had granted the appellant a patent:

"The decision [of the German Patent Office] has been examined, but, in view of the fact that the German patent system may be quite different in its legal aspects from that of the United States, we feel that it should not affect our conclusion here."

To the same effect is our holding in Re Kleine et al., 83 F.2d 928, 23 C.C.P.A., Patents, 1216.

For the reasons stated the decision of the Board of Appeals is affirmed.

Affirmed.